UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Wesley Williams,

               Plaintiff,

   -against-

Carl J. Koenigsmann, Regional Medical
Director of Green have Correctional
Facility, Facility Health Services Director
of Green Haven Correctional Facility,
Doctor Acrish, Sued in their Individual
Capacities,

               Defendants.

14CV2498 (NSR)(LMS)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff Wesley Williams ("Plaintiff") brings this action against Carl J. Koenigsmann,

Frederick Bernstein, Albert Acrish, and Barbara Griffith (collectively, "Defendants") for

violations of law. Defendants move to dismiss. For the following reasons, the motion is

DENIED.

## BACKGROUND[1]

      On April 7, 2014, *Pro se* Plaintiff filed this action against Defendants under 42 U.S.C. §

1983 for alleged violations of his Eighth and Fourteenth Amendment rights. (See Compl., ECF

No. 2.)

      Plaintiff alleges that he first began complaining of breast pain and put in for sick call in

December 2006 while he was incarcerated at Sing Sing Correctional Facility. (Compl. at 4.) At

---

[1] The facts in this section are drawn from the Complaint and Plaintiff's memorandum in opposition to
Defendants' motion to dismiss. A court "may consider factual allegations made by a *pro se* plaintiff in
opposition papers and other additional materials" in deciding a motion to dismiss. *Baskerville v Blot*, 224
F. Supp. 2d 723 (S.D.N.Y. 2002).

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/16/2015

an unspecified date, Plaintiff was transferred to Great Meadow Correctional Facility where he continued to suffer breast pain, but allegedly received no treatment. (Compl. at 4.)

Plaintiff was referred to an endocrinologist[2] by Nurse Practitioner Acrish.[3] (Compl. at 4.) The endocrinologist diagnosed Plaintiff with gynecomastia and suggested a surgical consult for a mastectomy. (Compl. at 4.)

Over the next four years Acrish allegedly repeatedly did not follow up with the endocrinologist's prescribed course of treatment despite Plaintiff's repeated complaints of pain. (Compl. at 4; Pl. Mem. at 4, ECF No. 24.) Plaintiff alleges that Defendants Bernstein and Griffith directed Acrish not to arrange the surgery purportedly because Defendants had designated the surgery as "cosmetic" based on a policy. (Compl. at 4; Pl. Mem. at 4.) Plaintiff alleges that this policy was created by Koenigsmann. (Pl. Mem. at 4.) Plaintiff claims that this decision contradicted the endocrinologist's opinion that Plaintiff's gynecomastia caused him extreme pain and that the pain would not resolve on its own. (Compl. at 4.)

Plaintiff alleges that he has not received any medication for pain or any treatment for gynecomastia. (Id.) Plaintiff concedes that he has received hormone therapy, but avers that this treatment was for a separate condition known as hypogonadism. (Pl. Mem. at 6.) Plaintiff alleges that his condition persists because Defendants have not given Plaintiff the surgery that he needs. (Pl. Mem. at 7.)

## STANDARD ON A MOTION 12(b)(6)

On a motion to dismiss for "failure to state a claim upon which relief can be granted," dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to

---

[2] The Complaint alleges that Plaintiff was referred to a "specialist." Plaintiff's opposition papers clarify that the specialist was an endocrinologist.

[3] In his complaint Plaintiff listed his first meeting with Acrish on April 17th, 2009. In his opposition to the motion to dismiss, however, he gives April 7th, 2011 as the first time that he met with Acrish.

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

*Pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). They are construed "liberally" and interpreted "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Additionally, this Court "may consider factual allegations made by a *pro se* plaintiff in opposition papers and other additional materials." *Baskerville v. Blot*, 224 F. Supp. 2d 723 (S.D.N.Y. 2002). However, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Boddie v. N.Y. State Div. of Parole*, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (quoting *Traguth v. Zuch*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

### I.     Section 1983 Claim

Plaintiff purports to bring claims under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.  "In order to state a claim under § 1983, a plaintiff must allege that, first, the conduct complained of was committed by a person acting under color of state law, and, second, that such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Morales v. New York*, 22 F. Supp. 3d 256, 273 (S.D.N.Y. 2014) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).  A defendant's direct involvement is required in order to impose liability on that defendant under § 1983 for alleged Eighth Amendment violations.  See *Hobson v. Fischer*, No. 10 CIV. 5512 SAS 2011 WL 891314, at *3 (S.D.N.Y. Mar. 14, 2011).

A.      *Eight Amendment Claims*

Plaintiff has alleged a valid Eighth Amendment Claim against Bernstein, Acrish, Griffith, and Koenigsmann.  In order to establish an Eighth Amendment violation based on alleged inadequate medical treatment, Plaintiff must prove "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Whether a medical need is sufficiently serious is an objective standard.  *See Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998).  Defendants do not contest that Plaintiff has adequately alleged a medical need that was sufficiently serious from an objective standpoint.  (Def. Mem. at 6-8.)  Defendants argue that Plaintiff has failed to allege facts indicating that any of the defendants were deliberately indifferent.  (*Id.*)

"Deliberate indifference…require[s] allegations that the charged official acted with a 'sufficiently culpable state of mind.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quotation omitted).  "This mental state requires that the charged official act or fail to act while [being] aware of a substantial risk that serious inmate harm will result."  *Salahuddin v. Goord*,

467 F.3d 263, 280 (2d Cir. 2006), (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Mere negligence or medical malpractice is insufficient.  *See Harrison v. Barkley*, 219 F.3d 132, 138 (2d Cir. 2000).

Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case.  *Id.* at 703-04.  Furthermore, whether the application of a policy can amount to deliberate indifference is generally a question of fact that should be submitted to the jury.  *See Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005). The Second Circuit, for example, has held that an Eighth Amendment claim can lie where a defendant "reflexively applie[s] DOCS policy in the face of the unanimous, express, and repeated—but contrary—recommendations of plaintiff's treating physicians, including prison physicians," or where "prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians."  *Id.* (internal quotation marks omitted).

       1.    <u>*Acrish, Bernstein, and Griffith*</u>

Interpreting Plaintiff's claim against Acrish, Bernstein, and Griffith "to raise the strongest argument it suggests," Plaintiff alleges that Acrish referred Plaintiff to an endocrinologist.  After the endocrinologist prescribed a surgical consult, Acrish repeatedly denied this treatment for over four years in the face of Plaintiff's repeated complaints of pain and the endocrinologist's opinion that the pain would not resolve on its own.  Acrish allegedly did so at the behest of Bernstein and Griffith, who purportedly determined that Plaintiff's requested surgery was "cosmetic" because of a policy that all breast-removal surgery was cosmetic, regardless of the endocrinologist's opinion that the pain was caused by Plaintiff's gynecomastia and would not resolve on its own.  Because Acrish, Bernstein, and Griffith each had medical training, it is plausible to infer that they knew that (or were reckless with respect to whether) reflexive application of the policy to Plaintiff's case in the face of Plaintiff's repeated complaints of pain

and the endocrinologist's contrary prescription would not be protective of Plaintiff's well-being. *Cf. Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) (finding medical training relevant to the issue of whether a defendant's automatic and complete deference to a policy regardless of circumstance renders that defendant deliberately indifferent). Accordingly, Plaintiff has sufficiently alleged that Acrish, Bernstein, and Griffith acted with deliberate indifference to Plaintiff's serious medical needs.

### 2. Koenigsmann

Interpreting Plaintiff's claim against Koenigsmann "to raise the strongest argument it suggests," Plaintiff has asserted a plausible claim against Koenigsmann. Plaintiff alleges that Koenigsmann created a policy that denied mastectomies because they were viewed as cosmetic procedures. Plaintiff also alleges that Koenigsmann failed to remedy the wrongdoing of labeling a mastectomy as cosmetic, even after being informed of violations through reports and appeals.

"[A] plaintiff cannot bring a § 1983 claim against an individual based solely on his supervisory capacity or the fact that he held high positions of authority." *Id.* (citing *Thomas v. Coombe*, No. 95 CIV. 10342 HB, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998)) (internal quotation marks omitted).

Prior to *Iqbal*, personal involvement of a supervisory defendant was shown through the *Colon* factors:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to respond to notices that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995). However, in *Iqbal* the Supreme Court held

vicarious liability is inapplicable to § 1983 claims and a plaintiff "must prove that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Iqbal*, 556 U.S. at 663. Since *Iqbal* there has been dispute as to whether all of the

factors still apply. *Compare Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (reiterating

that the *Colon* factors were used prior to *Iqbal*, but declining to decide whether all of the factors

have survived *Iqbal), with Spear v. Hugles*, No. 08 CIV. 4026 SAS, 2009 WL 2176725, at *2

(S.D.N.Y. July 20, 2009) ("Accordingly only the first and third *Colon* factors have survived the

Supreme Court's decision in *Iqbal*."), *and Delgado v. Bezio*, No. 09 CIV. 6899 LTS, 2011 WL

1842294, at *8-9 (S.D.N.Y. May 9, 2011) ("[W]here the claim does not require a showing of

discriminatory intent, the *Colon* analysis should still apply, insofar as it is "consistent with the

particular constitutional provision alleged to have been violated.") (quoting *Qasem v. Toro*, 737

F. Supp. 2d 147, 151-52 (S.D.N.Y. 2010)).

Notwithstanding the unsettled nature of the law in this area, it is clear that a valid § 1983

may lie "where unconstitutional acts are the result of a policy promulgated by the defendant."

*See Brock*, 315 F.3d at 166. The plaintiff in *Brock* developed a keloid on his face that caused

him pain when he did things like brush his teeth, yawn, or chew food. *Id.* at 161. A DOCS nurse

prescribed antibiotic ointment and referred him for a consultation with a dermatologist. *Id.* A

few days later, a DOCS physician concurred with the need for a referral. *Id.* The regional

medical director, applying a policy promulgated by one of the defendants, determined that "the

nature of the requested consultation was 'cosmetic,'" and denied the request for a referral. *Id.* at

161-62. The Second Circuit reversed the district court's order granting summary judgment,

reasoning that that there was evidence from which a jury could conclude that the defendant who

created the policy knew that the policy would be read so as to deny the plaintiff treatment for chronic pain associated with his keloid. *Id.* Here, Plaintiff alleges that Koenigsmann's policy designates all mastectomies as cosmetic. (*See* Pl. Mem. at 4-5.) He also alleges that Acrish, Bernstein, and Griffith denied his consult for a mastectomy because of that policy. (*See* Pl. Mem. at 6.) As in *Brock*, it is plausible that Koenigsmann knew that the policy could be applied in this fashion, i.e., to deny mastectomies that are medically necessary to treat pain caused by gynecomastia. Therefore Plaintiff's allegations are adequate to extend liability to Koenigsmann.

        B.     *Fourteenth Amendment Claims*

        In Plaintiff's Complaint, he asserts Fourteenth Amendment violations. Defendants do not seek dismissal of said claims. Accordingly, the Court will not address any Fourteenth Amendment claims asserted.

## CONCLUSION

        For the foregoing reasons, Defendants' motion to dismiss is DENIED. Defendants shall have until 30 days from the date of this order to file an answer. An initial case management and scheduling conference pursuant to Fed. R. Civ. P. 16 is scheduled for September 25, 2015 at 12:30 p.m., at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New York 10601. The parties shall confer in accordance with Fed. R. Civ. P. 26(f) at least 21 days prior to the conference and attempt in good faith to agree upon a proposed discovery plan that will ensure trial readiness within six months of the conference date. The parties shall also complete a Civil Case Discovery Plan and Scheduling Order and bring it to the conference. The Court respectfully directs the Clerk to terminate the motion at ECF No. 25.

Dated:   July 16, 2015
         White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge